

**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20001*

August 9, 2016

**VIA ECF**
The Honorable Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 21C
New York, NY  10007-1312

> Re:   *United States of America v. Broadcast Music, Inc.*, Case No. 64 Civ. 3787

Dear Judge Stanton:

The Antitrust Division conducted a two-year review of the BMI and ASCAP antitrust consent decrees that included intensive consultation with BMI and ASCAP.  As explained in the Closing Statement, the United States determined that modifications proposed by BMI and ASCAP risk considerable disruption in the music licensing industry, while the concerns BMI and others have described with preserving full-work licensing are overstated.  BMI's insistence that the Closing Statement marks a radical departure from existing practice is belied by its own statements, is disproven by its own practices, and, if accepted, would undermine the value of BMI's licenses.  As *BMI itself* acknowledged more than a year ago, BMI's consent decree "has been construed to compel BMI to grant licenses to perform the 'composition' – not merely the partial interest in the composition owned by BMI's affiliate."  Ex. A at 4-5.[1]  And BMI's unilateral request for modification, far from identifying the "significant change in circumstances" required to modify a consent decree, expressly *denies* that the requested modification "is proposed to adapt the decree to changed circumstances in law or fact."  BMI Letter at 5 n.7.

**I.   Background to the Current Dispute.**

In 2014, at BMI's and ASCAP's request, the Antitrust Division opened an investigation to examine the possibility of proposing certain modifications to the ASCAP and BMI consent decrees, notably that publishers be allowed to "partially withdraw" from the PROs.  As the Division studied this issue, an until-then largely unexamined question came to the fore – whether, for works not entirely controlled by the affiliates of a single PRO, a license from that

---

[1]  BMI claims this white paper is a confidential settlement communication.  The United States disagrees, but to avoid any dispute, has redacted page 7 as the only part that even hints at resolution of some dispute and which "is clearly identified and thus easily severable from the remainder of the submission."  *In re Initial Public Securities Litigation,* 2003 US Dist. LEXIS 23102, at *13-14 (S.D.N.Y. Dec. 24, 2003).

Honorable Louis L. Stanton
August 9, 2016
Page 2

PRO conveyed the ability to perform the work or instead conveyed something less.  Under copyright law, co-owners of a work operate under a tenancy-in-common allowing each to offer nonexclusive licenses to that work, but they can agree to impose contractual limitations on one another's ability to do so.  The question then is how BMI and ASCAP do or must license such multi-owner works.

When the issue arose, BMI itself acknowledged that (1) the industry had historically operated on a tenancy-in-common basis, (2) a move to fractional licensing would be an "evolution" from historical practice, and (3) the BMI consent decree "has been construed" to require full-work licensing.  *See* Ex. A at 1, 3-5.  (This is at odds with BMI's current insistence to this Court that the industry has never operated on a tenancy-in-common basis, that fractional licensing "has been the status quo for decades," and that its consent decree "does not require 100% licensing."  BMI Letter at 3-5.)  Given the request by BMI and a parallel request by ASCAP to modify the decrees to allow fractional licensing, the Division sought a second round of public comments regarding the possibility of such a modification.

The Division received more than 130 responses to this request and then held dozens of stakeholder meetings and received additional written submissions from BMI, ASCAP, and others.  In early 2016, the Division informed BMI and ASCAP of its preliminary view that it would not support modification to endorse fractional licensing and provided further opportunity for engagement.  Finally, on August 4, the Department of Justice issued a Closing Statement that explained its reasoning for declining to seek modification of the decrees and for interpreting the decrees as requiring full-work licensing, and that also provided suggestions about ways in which the industry might continue to comply with the decrees without undue disruption.  *See* Dkt. No. 90-1.  The Division also promised in the Closing Statement to forbear from enforcement of full-work licensing for the next year to allow the industry to make any needed adjustments.  Immediately after the Closing Statement was released, BMI and ASCAP issued a joint press release (attached as Exhibit B) explaining that the two PROs would attempt to divide and conquer, with BMI seeking redress from this Court and ASCAP pursuing legislative change.

## II.   The Decree Requires BMI to License Compositions, Not Interests in Compositions.

BMI's consent decree requires its licenses to provide the ability to perform "those compositions, the right of public performance of which defendant has or hereafter shall have the right to license or sublicense."  BMI Decree § II(C).  (Similarly, ASCAP's consent decree requires it to offer licenses "to perform all the works in the ASCAP repertory".  ASCAP Decree § VI.)  The United States reads "compositions" to mean, unambiguously, "compositions."  BMI asked the Division and now asks this Court to read three additional words into that provision: "*partial interests in* compositions."  *See* BMI Letter at 4.  Those words would allow BMI to offer something less than the ability to perform compositions, but they are not in the decree today.

BMI knows this.  As described above, BMI acknowledged as much to the Division last year.  *See* Ex. A at 14 (describing "the decree's apparent requirement of mandatory licensing of the entire composition").  Just five months ago, BMI told this Court that its licenses provide "immediate access to the more than 10.5 million works in BMI's repertoire."  Ex. C at ¶ 8.  Consistent with a full-work interpretation, BMI for decades has offered licensees the ability to "perform" "works" or "compositions."  *See, e.g.*, Ex. D at 3(A).  Those licenses never granted

Honorable Louis L. Stanton
August 9, 2016
Page 3

rights to "interests in compositions," and always granted licensees the ability to "perform" the compositions; BMI does not explain how a licensee could "perform" an interest in a composition.  And when joining BMI, its affiliate songwriters expressly grant BMI the right to license "[a]ll music compositions (including the musical segments and individual compositions written for a dramatic or dramatic-musical work) composed by you alone *or with one or more co-writers* during the Period [of BMI affiliation] . . . ."  *See* Ex. E at ¶¶ 1(b), 4(a).

In providing licenses entitling users to perform compositions, BMI provides exactly the "unplanned, rapid, and indemnified access to any and all of the repertory of compositions" the Supreme Court described as the key procompetitive feature of the blanket license.  *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 20 (1979).  The Antitrust Division's detailed investigation confirmed that fractional licensing could not fulfill this mandate.  Nor could fractional licensing be squared with the Second Circuit's holding that ASCAP is "required to license its entire repertory to all eligible users," and that the repertory includes "all works contained in the ASCAP repertory."  *Pandora Media, Inc. v. ASCAP*, 785 F.3d 73, 77-78 (2d Cir. 2015) (emphasis omitted).  Even if, as BMI argues, *Pandora* alone is not determinative of the question, the decision's reasoning is, at a minimum, informative.[2]

### III.    BMI Has Offered No Justification to Modify the Decree to Allow BMI to Offer Licenses That Do Not Provide the Ability to Perform Compositions.

The Antitrust Division devoted months to analyzing BMI's request to modify the decree to endorse fractional licensing and determined that doing so would undermine the virtues of the blanket license and not be in the public interest.  In now moving to make that modification over the United States' opposition, BMI "bears the burden of establishing that a significant change in circumstances warrants revision of the decree."  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992).  But BMI identifies no such change.  BMI's recognition last year of the decree's "apparent requirement of mandatory licensing of the entire composition" should end any argument that the Division's interpretation marks some sort of radical departure.  And BMI's consistent practice of granting licenses to perform works, and describing them as such, should make clear that it would be a departure *not* to provide full-work licenses.

The United States took seriously ASCAP's and BMI's modification request.  We recognize the potential complexities BMI describes in its letter.  But, as described in more detail in the Closing Statement, we concluded that modifying the consent decrees to allow fractional licensing would undermine the traditional role of the ASCAP and BMI licenses, impair the functioning of the market for public performance licensing, and potentially reduce the playing of music.  *See* Dkt. No. 90-1 at 13-16.

---

[2]  BMI also urges the Court to defer to the United States Copyright Office's interpretation of this antitrust consent decree.  BMI Letter at 4.  The question at issue, however, is one of antitrust law and decree interpretation, not copyright law.  As discussed above, the consent decrees' references to "compositions" (in the case of BMI) and "works" (in the case of ASCAP) cannot be read, consistent with the terms and purposes of the decrees, to provide something less than the ability to perform musical works.  Nothing in the consent decrees – including the full-work licensing requirement – contradicts or overrides copyright law; rather, the decrees restrict the ways in which competitors participating in BMI and ASCAP can jointly exercise their copyrights so as to limit their ability to exercise market power.

Honorable Louis L. Stanton
August 9, 2016
Page 4


Respectfully,


/s/ Kelsey W. Shannon
Kelsey W. Shannon
kelsey.shannon@usdoj.gov
(202)-598-2854


Enclosures
cc:     Scott A. Edelman (via ECF)
        Atara Miller (via ECF)