# MILBANK, TWEED, HADLEY & McCLOY LLP

**28 LIBERTY STREET**

**NEW YORK, N.Y. 10005-1413**

212-530-5000

FAX: 212-530-5219

Scott A. Edelman
Chairman
DIRECT DIAL NUMBER
212-530-5149
E-MAIL: sedelman@milbank.com

| | |
|---|---|
| **LOS ANGELES** 213-892-4000 FAX: 213-629-5063 | **BEIJING** 8610-5969-2700 FAX: 8610-5969-2707 |
| **WASHINGTON, D.C.** 202-835-7500 FAX: 202-835-7586 | **HONG KONG** 852-2971-4888 FAX: 852-2840-0792 |
| **LONDON** 44-20-7615-3000 FAX: 44-20-7615-3100 | **SEOUL** 822-6137-2600 FAX: 822-6137-2626 |
| **FRANKFURT** 49-69-71914-3400 FAX: 49-69-71914-3500 | **SINGAPORE** 65-6428-2400 FAX: 65-6428-2500 |
| **MUNICH** 49-89-25559-3600 FAX: 49-89-25559-3700 | **TOKYO** 813-5410-2801 FAX: 813-5410-2891 |
| | **SÃO PAULO** 55-11-3927-7700 FAX: 55-11-3927-7777 |

August 12, 2016

**VIA ECF & HAND DELIVERY**

Honorable Louis L. Stanton
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21C
New York, NY 10007

Re:   *United States of America v. Broadcast Music, Inc.*, No. 64 Civ. 3787

Dear Judge Stanton:

We write on behalf of Broadcast Music, Inc. ("BMI") in response to the letter submitted to the Court by the Department of Justice (the "DOJ") on August 9, 2016 (ECF No. 92) (the "DOJ Letter") and in further support of BMI's letter, dated August 4, 2016 (ECF No. 87), requesting a pre-motion conference (the "BMI Letter") to address the DOJ's August 4 statement (the "DOJ Statement").[1]

The DOJ's recent letter distorts the position that BMI has previously taken with respect to whether the Consent Decree allows fractional licensing. In the DOJ Statement, the DOJ accurately summarized BMI's position as follows: "ASCAP and BMI ***did not concede that the existing consent decrees prohibited fractional licensing***, but proposed that their consent decrees be modified to explicitly allow them to offer fractional licenses." (DOJ Statement at 9 (emphasis added).)

---

[1] Terms used herein but not defined have the meaning ascribed to them in the BMI Letter.

Honorable Louis L. Stanton
August 12, 2016
Page 2

In its August 9, 2016 letter to the Court, however, the DOJ misleadingly suggests that BMI has previously taken an inconsistent position. Relying on a confidential BMI white paper (the "<u>Confidential White Paper</u>")[2] submitted by BMI as part of settlement negotiations, the DOJ wrongly suggests that BMI had previously conceded that the Consent Decree requires full work licensing.

The DOJ is wrong. There is no inconsistency between BMI's position today and the position taken in the Confidential White Paper. For starters, some context is relevant. At the time that BMI submitted the Confidential White Paper, BMI believed that the DOJ was intending to take the position that the Consent Decree would "require BMI to license each composition in its repertoire as a whole, *regardless of the owners' decision to divide their ownership interests*." (Confidential White Paper at 6 (emphasis added).) That is, BMI understood the DOJ was considering a position that would require BMI to license 100% of every composition in its repertory even in those circumstances where (i) BMI's affiliate had only granted BMI the right to license its fractional interest in a composition, (ii) that affiliate only held the work as a joint tenant (as opposed to the default tenancy-in-common rule), and (iii) its joint tenant co-owners were not otherwise BMI affiliates. It is that position—which would override the rights granted to non-BMI affiliates by copyright law—to which the Confidential White Paper responded. (*See, e.g.*, *id.*)

Nothing in the Confidential White Paper conceded that the term "compositions" in the Consent Decree requires BMI to license *solely* on a 100% basis or otherwise prohibits BMI from fractional licensing. Rather, BMI made clear that it was responding, *arguendo*, to a construction of the Consent Decree that it understood the DOJ to have adopted. (*See, e.g.*, Confidential White Paper at 5 ("BMI's consent decree, which *has been construed* to compel BMI to grant licenses to perform the 'composition' – not merely the partial interest in the composition owned by BMI's affiliate.") (emphasis added); *id.* at 6 ("Yet the BMI consent decree *has been construed arguably* to require BMI to license each composition in its repertoire as a whole, regardless of the owners' decision to divide their ownership interests.") (emphasis added).)[3]

---

[2] When the DOJ indicated its intention to rely on BMI's Confidential White Paper, BMI objected on the ground that introduction of such past discussions in an effort to suggest some inconsistency would be impermissible under Federal Rule of Evidence 408(a). The DOJ unilaterally determined, however, to place the Confidential White Paper before the Court. As a result, BMI has felt compelled to provide greater context for the Confidential White Paper, by describing certain of its prior discussions with the DOJ concerning fractional licensing. In doing so, BMI does not intend to waive the Rule 408(a) objection that it had previously communicated to the DOJ.

[3] The DOJ is also wrong that BMI "acknowledged that . . . the industry had historically operated on a tenancy-in-common basis." (DOJ Letter at 2.) The Confidential White Paper stated only that tenancy-in-common is the default rule with respect to public performance rights, and that "co-owners of songs have had little reason to exercise their rights to vary from" the default rule because "virtually all" music users "held licenses from all PROs, covering their entire repertoire" and co-owners are paid "separately and proportionately by [] their respective PROs[.]" (Confidential White Paper at 3-4.) In other words, although co-owners generally *own* compositions as tenants-in-common, the industry has *licensed* those co-owners' interests on a fractional basis. This is fully consistent with BMI's letter to this Court. (BMI Letter at 2-3 (same).) In any event, as BMI subsequently learned through public comments submitted in response to the DOJ's request for comments on the issue and the Copyright Office report, co-owners often depart from the default rule. (*See* Sony/ATV Music Publishing LLC Comments on PRO Licensing of Jointly Owned Works at 19, available at https://www.justice.gov/atr/ASCAP-BMI-comments-2015; Donald S.

Honorable Louis L. Stanton
August 12, 2016
Page 3

      What has changed is not BMI's position, but its understanding of the DOJ's position.[4] At that time, BMI (and others submitting public comment) believed the DOJ was taking the position that the Consent Decree might be read to require BMI to license on a 100% basis works in which it has only a fractional interest. Such an interpretation would have plainly run counter to the law. By contrast, the DOJ is now taking the position that the Consent Decree includes a prohibition that nowhere appears in the document. Specifically, the DOJ argues that, to the extent BMI holds only a fractional interest in a work such that the composition cannot be licensed on a full work basis, that work is not eligible to be included in the BMI repertory and BMI cannot license the fractional interest at all.

      The DOJ's current position rests on its interpretation of the Consent Decree's definition of "repertory," which refers only to "compositions" and not "*partial interests in* compositions." (DOJ Letter at 2 (emphasis in original).) In the DOJ's view, the term "composition" in the Consent Decree "unambiguously" excludes "something less than the ability to perform compositions." (*Id.*) Thus, under the DOJ's reading of the Consent Decree, fractional interests are not "compositions" at all and "are not in the decree today."[5] (DOJ Letter at 2.) Our prior submission outlines the problems with the DOJ's reading, including that custom and practice in the music industry is that the phrase "compositions" is routinely understood to include partial interests in a work.

      We note, however, that even accepting, *arguendo*, the DOJ's construction of the Decree, BMI would still be permitted to license fractional interests in works. As noted, the DOJ concludes that the fractional interests are "not in the decree today." The effect of that is not, as the DOJ suggests, that BMI cannot license those works. That is not the way the Consent Decree reads. Unless the Consent Decree expressly prohibits BMI from licensing those fractional

---

Passman of Gang, Tyre, Ramer & Brown, Inc. (on behalf of the National Music Publishers' Association) Comments on PRO Licensing of Jointly Owned Works at 2, available at https://www.justice.gov/atr/ASCAP-BMI-comments-2015; CRO Views at 8-12.)

The DOJ also misrepresents that BMI claimed that "fractional licensing would be an 'evolution' from historical practice." (DOJ Letter at 2.) BMI made clear that the status quo involved fractional pricing of licenses and fractional payment and distribution of royalties such that "[t]here ha[d] been no need for writers or publishers to check up on whether co-owners were doing a good job of licensing the song, no need to account to each other, and no need for publishers to audit each other." (Confidential White Paper at 3-4.) BMI also made clear that this status quo was "now unstable," *i.e.* evolving because of "the prospect of partial or full withdrawals by publishers from PROs, the rise of unregulated PROs, and the possibility that significant music users might choose to be selective in acquiring music performing rights instead of seeking comprehensive (i.e., blanket) licenses covering all songs." (*Id.* at 4.) The evolution was in the participants in the rights landscape, *not* in the way rights were licensed. This is fully consistent with the BMI Letter. (BMI Letter at 5, 6, n. 9.)

[4] Equally specious is the DOJ's argument that BMI has somehow conceded that the requested Consent Decree modification is not due to changed circumstances in law or fact. As the portion of the BMI Letter cited by the DOJ makes clear, it is the **DOJ's new interpretation of the Consent Decree**, which is contrary to decades of industry practice, that is itself the "changed circumstances in law or fact" that would warrant a modification if the Court agreed with the DOJ's new interpretation. (DOJ Letter at 1 (quoting BMI Letter at 5 n.7).)

[5] As noted in BMI's Letter, this will have the undesirable effect of creating a whole body of stranded works that are not licenseable by any PRO. (BMI Letter at 5.) This position was neither contemplated nor addressed in the Confidential White Paper.

Honorable Louis L. Stanton
August 12, 2016
Page 4

interests, it is permitted to do so.  *See, e.g., United States v. Armour*, 402 U.S. 673, 678-79, 682 (1979) (where a consent decree unambiguously "prohibits certain behavior" and not others, the other behavior is not prohibited).

     The Consent Decree was never intended to prohibit BMI from licensing partial interests in compositions.  Nor does the Consent Decree's language preclude BMI from doing so.  Consent Decrees should not be reinterpreted to suit the policy views of the DOJ at a subsequent point in time.

     We are available at the Court's convenience should Your Honor have any questions.

     Respectfully,

/s/ *Scott A. Edelman*
Scott A. Edelman

cc:    Kelsey W. Shannon (via ECF)