# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   9/16/16
```

----------------------------------------X

UNITED STATES OF AMERICA,      :

               Plaintiff,   :

     -v.            :   64 Civ. 3787 (LLS)

BROADCAST MUSIC, INC.,     :   **OPINION & DECLARATORY**
                                  **JUDGMENT**

               Defendant.   :

----------------------------------------X

     This application for a construction of the  Final Judgment ("Consent Decree")[1] in this case is stimulated by the August 4, 2016 publication of the Antitrust Division of the U.S. Department of Justice's "Statement of the Department of Justice on the Closing of the Antitrust Division's Review of the ASCAP and BMI Consent Decrees" ("Statement"), which asserts that:

> . . . the consent decrees, which describe PROs'[2] licenses as providing the ability to perform "works" or "compositions," require ASCAP and BMI to offer full-work licenses.[3]  The Division reaches this determination

---

[1] 1966 U.S. Dist. LEXIS 10449, 1966 Trade Cas. (CCH) ¶ 71,941 (S.D.N.Y. 1966), modified by 1994 WL 901652, 1994 U.S. Dist. LEXIS 21476, 1996-1 Trade Cas. (CCH) ¶ 71,378 (S.D.N.Y. 1994).

[2] PROs are "performing rights organizations" who "provide licenses to users . . . to publicly perform the musical works of the PROs' thousands of songwriter and music publisher members." [Statement p. 2]

[3] The Statement defines these:

> Under a "full-work" license, each PRO would offer non-exclusive licenses to the work entitling the

based not only on the language of the consent decrees and
its assessment of historical practices, but also because
only full-work licensing can yield the substantial
procompetitive benefits associated with blanket licenses
that distinguish ASCAP's and BMI's activities from other
agreements among competitors that present serious issues
under the antitrust laws.  [Statement p. 3]

\*   \*   \*

If PROs offer fractional licenses, a music user, before
performing any multi-owner work in a PRO's repertory,
would need a license to the fractional interests held by
each of the work's co-owners.  A full-work license from
a PRO, on the other hand, would provide infringement
protection to a music user seeking to perform any work in
the repertory of the PRO.  [id. p. 10]

\*   \*   \*

If the licenses were fractional, they would not provide
*immediate* use of covered compositions; users would need
to obtain additional licenses before using many of the
covered compositions.  And such fractional licenses would
*not* avoid the delay of additional negotiations, because
users would need to clear rights from additional owners
of fractional interests in songs before performing the
works in the ASCAP and BMI repertories.  Similarly, the
Second Circuit has held that ASCAP is "required to license
its entire repertory to all eligible users," and that the
repertory includes "all works contained in the ASCAP

---

[3] (cont'd)

user to perform the work without risk of infringement
liability.  Under a "fractional" license, each PRO
would offer a license only to the interests it holds
in a work, and require that the licensee obtain
additional licenses from the PROs representing other
co-owners before performing the work.  [Statement
p. 8]

repertory." <u>Pandora Media, Inc. v. ASCAP</u>, 785 F.3d 73, 77-78 (2d Cir. 2015) (emphasis removed).   The Second Circuit rejected arguments that this decree requirement conflicted with copyright law, noting that "[i]ndividual copyright holders remain free to choose whether to license their works through ASCAP." <u>Id.</u> at 78.   The logic of the Second Circuit's decision applies to BMI as well.

Accordingly, the consent decrees must be read as requiring full-work licensing.   ASCAP and BMI can include in their repertories only those songs they can license on such a basis.   [<u>id</u>. p.12]

*   *   *

Moreover, nothing in this interpretation contradicts copyright law.   To the extent allowed by copyright law, co-owners of a song remain free to impose limitations on one another's ability to license the song.   Such an action may, however, make it impossible for ASCAP or BMI--consistent with the full-work licensing requirement of the antitrust consent decrees--to include that song in their blanket licenses.   [<u>id</u>. p. 13]

BMI promptly sought a declaratory judgment that the Consent Decree does not require 100% ("full-work") licensing.

## DISCUSSION

Nothing in the Consent Decree gives support to the Division's views.   If a fractionally-licensed composition is disqualified from inclusion in BMI's repertory, it is not for violation of any provision of the Consent Decree.   While the Consent Decree requires

BMI to license performances of those compositions "the right of public performances of which [BMI] has or hereafter shall have the right to license or sublicense" (Art. II(C)), it contains no provision regarding the source, extent, or nature of that right. It does not address the possibilities that BMI might license performances of a composition without sufficient legal right to do so, or under a worthless or invalid copyright, or users might perform a music composition licensed by fewer than all of its creators.

The parties to it stipulated that the Consent Decree did not extend to problems such as those involved in determining the value or validity of copyrights of compositions in BMI's repertory. The Consent Decree states in Article XIV (D):

> (D)    Nothing in this Article XIV shall prevent any applicant from attacking in the aforesaid [rate court] proceedings or in any other controversy the validity of the copyright of any of the compositions in defendant's repertory nor shall this Judgment be construed as importing any validity or value to any of said copyrights.

The Consent Decree does not regulate the elements of the right to perform compositions.  Performance of a composition under an ineffective license may infringe an author's rights under copyright, contract or other law, but it does not infringe the Consent Decree, which does not extend to matters such as the invalidity or value of copyrights of any of the compositions in BMI's repertory.  Questions of the validity, scope and limits of the right to perform

4

compositions are left to the congruent and competing interests in the music copyright market, and to copyright, property and other laws, to continue to resolve and enforce.  Infringements (and fractional infringements) and remedies are not part of the Consent Decree's subject-matter.

The structural difference between the issue of the fractional licenses and BMI v. Pandora Media, Inc., No. 13 Civ. 4037 (LLS), 2018 WL 6697788 (S.D.N.Y. Dec. 19, 2013) illustrates the point.  In the Pandora case, the Consent Decree itself explicitly regulated the conduct:  "The BMI Consent Decree requires that all compositions in the BMI repertory be offered to all applicants" id. at *3;  "Under Section XIV of the BMI Consent Decree, when an applicant requests a license for `any, some or all of the compositions in defendant's repertory,' BMI must grant a license for performance of the requested compositions . . . to all applicants, with fees that do not discriminate between applicants similarly situated." [Id.]  The language of the Consent Decree was mandatory and unambiguous. Compositions, whose copyright-holders persuaded BMI to exclude them from BMI's offer to Pandora and New Media (digital) services, did not meet the standards of the BMI Consent Decree and were accordingly disqualified under its own terms from participation in BMI's repertory.

The Consent Decree contains no analogous provision concerning the values of fractional versus full-work licensing.  That area of dispute is left to the applicable law.

5

<u>DECLARATORY JUDGMENT</u>

The phrase in Art. II (C) of the Consent Decree defining BMI's repertory as "those compositions, the right of public performance of which [BMI] has . . . the right to license or sublicense" is descriptive, not prescriptive.  The "right of public performance" is left undefined as to scope or form, to be determined by processes outside the Consent Decree.  The Consent Decree neither bars fractional licensing nor requires full-work licensing.

DATED:  New York, New York
        September 16, 2016


_____
LOUIS L. STANTON
U. S. D. J.