**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

Plaintiff,

v.

BROADCAST MUSIC, INC.,

Defendant.

64-3787 (LLS)

*Related to Radio Music License Committee, Inc. v. American Society of Composers, Authors and Publishers; and Broadcast Music, Inc.*, (S.D.N.Y. 2022) 22-cv-05023 (JPC)

---

## APPLICATION FOR CONSTRUCTION OF BROADCAST MUSIC, INC.'S CONSENT DECREE PURSUANT TO ARTICLE XIII OF THE DECREE AND 28 U.S.C. § 137(b)(2)

Scott A. Edelman
Atara Miller
Andrew Porter
Milbank LLP
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
Email: sedelman@milbank.com

-and-

Stuart Rosen
Hope Lloyd
Revi-ruth Enriquez-Cohen
7 World Trade Center
250 Greenwich Street
New York, New York 10007

*Counsel for Broadcast Music, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND........................................................................................................3

    A.    The 1994 Amendments to the Consent Decree Created A Rate Court for BMI Distinct From the Already Existing ASCAP Rate Court ........................................3

    B.    In 2014 the RMLC Acknowledged (Again) that the Consent Decree Included a "Firewall" Separating the BMI and ASCAP Rate Courts.....................................7

    C.    The Music Modernization Act Randomized Assignment of Rate Court Judges and Did Not Alter the Requirement of Mandatory Separateness..................................7

    D.    The RMLC Files A Joint Proceeding Against ASCAP and BMI..........................8

    E.    BMI Files This Application for Construction of the Decree.................................9

JURISDICTION .........................................................................................................................10

ARGUMENT..............................................................................................................................10

    A.    The Consent Decree Bars Joint Rate Court Proceedings ....................................10

CONCLUSION...........................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Broad. Music, Inc. v. Pandora Media, Inc.,*
    140 F. Supp. 3d 267 (S.D.N.Y. 2015) .................................................................................... 12

*Pandora Media, Inc. v. Am. Soc'y of Composers, Authors & Publishers,*
    785 F.3d 73 (2d Cir. 2015) ..................................................................................................... 12

*In re Petition of Pandora Media, Inc.,*
    6 F. Supp. 3d 317 (S.D.N.Y. 2014) ...................................................................................... 12

*United States v. Am. Soc'y of Composers, Authors & Publishers,*
    782 F. Supp. 778 (S.D.N.Y. 1991) ................................................................................. 10, 13

*United States v. American Soc'y of Composers, Authors & Publishers,*
    41-cv-1395, ECF No. 389 (S.D.N.Y. Aug. 7, 2009) ............................................................ 13

*United States v. Broad. Music, Inc.,*
    275 F.3d 168 (2d Cir. 2001) ................................................................................................. 14

*United States v. Broad. Music, Inc.,*
    316 F.3d 189 (2d Cir. 2003) ................................................................................................. 12

*United States v. Broad. Music, Inc.,*
    No. 64 CIV. 3787 (LLS), 2001 WL 829874 (S.D.N.Y. July 23, 2001) ................................ 12

*United States v. ITT Cont'l Baking Co.,*
    420 U.S. 223 (1975) ............................................................................................................. 14

**Statutes**

28 U.S.C. § 137(b)(1) .......................................................................................................... 7, 8, 11

28 U.S.C. § 137(b)(2) ....................................................................................................... 1, 2, 9, 10

## **PRELIMINARY STATEMENT**

On June 15, 2022, contrary to the requirements of Broadcast Music, Inc's ("BMI") consent decree (the "Consent Decree" or "Decree"), the Radio Music License Committee (the "RMLC"), a trade organization representing commercial broadcast radio stations, filed a proceeding against both BMI and the American Society of Composers, Authors and Publishers ("ASCAP"), invoking the jurisdiction of their respective consent decrees in a single proceeding for the express purpose of having one court set rates jointly for the licenses the RLMC separately requested from each performing rights organization ("PRO").  BMI's Decree forbids such a joint proceeding.

Under the Decree and the Music Modernization Act (Pub. L. 115-264, title I, § 104, Oct. 11, 2018, 132 Stat. 3726) (the "MMA"), the Hon. Louis L. Stanton has continuing oversight over BMI's Consent Decree, and BMI must file an application for construction of its Decree in this Court.[1]  Accordingly, BMI hereby applies for a construction of its Consent Decree, declaring that the RMLC was and is not permitted to bring a single rate-setting proceeding against both BMI and ASCAP.

In 1994, BMI moved this Court to modify the Consent Decree to add a rate-setting provision that established a rate court.  One condition of BMI's request for a rate court provision was that the Decree require that all BMI rate proceedings be entirely separate from any rate proceedings for ASCAP,[2] and that any judges, magistrates and special masters overseeing ASCAP's rate proceedings would be different than judges, magistrates and special masters overseeing BMI's rate proceedings.  This condition was incorporated in Article XIII of the Consent

---

[1] The MMA requires that a rate case—such as the joint proceeding brought by the RMLC here—"shall be stayed until the final determination of the construction application."  28 U.S.C. § 137(b)(2).

[2] ASCAP's decree has included a rate court since 1950.

1

Decree.  *See* Porter Decl.[3] Ex. 1, Order Modifying the 1966 Consent Decree Herein, at *3.  In its motion for modification of the Decree, BMI explained that this amendment was intended "to establish a rate court for BMI that is in every respect independent from the rate proceedings for ASCAP[.]"  *See* Porter Decl. Ex. 2, Memorandum of Defendant Broadcast Music, Inc. in Support of Motion to Modify Consent Decree, June 27, 1994 (the "<u>Modification Motion</u>"), at 35.

Neither the United States nor music users objected to this condition.  Contemporaneous filings show that every commenting party, including the RMLC, understood BMI's condition for submitting itself to rate court to be the separation of rate courts for BMI and ASCAP.  Music users referred to the additional language as the "mandatory two-court provision."  Judge Robert P. Patterson, who oversaw BMI's Consent Decree at the time, found that BMI's proposed amendments were in the public interest, and the Decree was amended to incorporate the new rate court provisions—including the "mandatory two-court provision" in Article XIII.  The Decree thus includes a rate court provision (Article XIV) and the mandate that BMI rate cases proceed before a different judge from ASCAP rate proceedings (Article XIII).

Now, almost three decades later, and despite the Consent Decree's express prohibition on joint rate proceedings, that same RMLC seeks to bring a joint proceeding against BMI and ASCAP together before a single judge in direct contravention of the "mandatory two-court provision" enshrined in the Decree.

BMI expects that the RMLC will argue, as it states in its joint petition (the "<u>Petition</u>"), that the MMA somehow overrides the Decree.  However, the MMA did not change the terms of the Decree; it simply modified the administrative assignment procedures for rate cases by randomizing

---

[3] The Declaration of Andrew Leighton Porter in Support of BMI's Application for Construction of Broadcast Music, Inc.'s Consent Decree Pursuant To Article XIII of the Decree and 28 U.S.C. § 137(B)(2).

the selection of separate judges for BMI and ASCAP rate proceedings.  Nothing in the MMA suggests that it overrides the Consent Decree's requirement that rate court proceedings for BMI and ASCAP be separate.  To the contrary, in setting out the new process for the assignment of judges to preside over rate determination proceedings, the MMA expressly prohibits proceedings from being assigned to a judge who is already overseeing a rate court case, or who has jurisdiction over either the BMI or ASCAP consent decrees, thus preserving, rather than eliminating, the separateness of the BMI and ASCAP rate proceedings.

The Consent Decree language is clear:  BMI rate cases must be separate from ASCAP rate cases.  All of the contemporaneous and subsequent evidence is consistent with this interpretation and clearly demonstrates that all of the interested parties—including BMI, the Department of Justice ("DOJ") and the RMLC—understood the plain meaning and effect of the mandatory two-court requirement embodied in Article XIII.  Accordingly, and for the reasons detailed below, BMI seeks a ruling that the Consent Decree should be interpreted consistent with its language, as plainly written and as understood by the parties and the Court at the time of the rate court provision's adoption.  BMI and ASCAP rate-setting proceedings must be separate; they cannot be before the same judge in separate proceedings; and they certainly cannot be consolidated in a single proceeding before the same judge.

## **FACTUAL BACKGROUND**

### **A.    The 1994 Amendments to the Consent Decree Created A Rate Court for BMI Distinct From the Already Existing ASCAP Rate Court**

BMI has operated under a consent decree since 1941.  The current Consent Decree was approved in 1966, and was last amended in 1994 (the "1994 Amendments").  The 1994 Amendments made two notable relevant changes.  First, Article XIV was added, creating a BMI rate court.  *See* Porter Decl. Ex. 1, Order Modifying the 1966 Consent Decree Herein, at *1-2.

Second, Article XIII was amended to include the requirement that BMI and ASCAP have separate rate courts:

> To best preserve the independent conduct of defendant's music licensing activities, the jurisdiction retained by this Court over this Final Judgment shall be exercised by a Judge of this Court other than one to whom has been assigned any action in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization (e.g. ASCAP) other than defendant. No reference or assignment of any issue or matter under this Final Judgment shall be made to a Magistrate Judge or Master to whom has been referred or assigned any pending issue or matter in which any music performing rights licensing organization other than defendant as to which this Court has entered judgment retaining jurisdiction, (e.g. ASCAP) is a party.

*Id.* at *3.

The 1994 Amendments were made at the request of BMI, which was responding to, among other things, requests from major users that BMI "seek to modify its Consent Decree to establish a rate court." *See* Porter Decl. Ex. 2, Modification Motion, at 2-3.  In seeking modification, BMI included an explicit condition:  as part of the addition of a rate court provision, the Decree would have to be amended to guarantee separate BMI and ASCAP rate courts.  In its brief seeking approval of modifications to the Consent Decree, BMI explained that mandatory separateness was an essential element of its consent.  Among other things, BMI stated that:

- "Modification must establish a rate court separate from ASCAP's rate court." *Id.* at 35.

- "An independent rate court is key to BMI's motion." *Id.*

- "BMI steadfastly believes that a joint rate court for both it and ASCAP is less acceptable than the status quo." *Id.*

- "BMI does not want to risk becoming in any way associated with ASCAP proceedings." *Id.* at 36.

- "A joint rate court would be anticompetitive and therefore contrary to the public interest." *Id.*

BMI made clear that "[t]he intent of [the Article XIII amendment] is to **establish a rate court for BMI that is in every respect independent from the rate proceedings for ASCAP**," removing any question about the purpose of the Article XIII modification.  *Id.* at 35 (emphasis added).[4]  Indeed, Marvin Berenson, then BMI's General Counsel, testified in a sworn affidavit that:

> BMI steadfastly believes that a joint rate court for both it and ASCAP is less acceptable than the <u>status quo</u>.  **BMI would rather retain its current position of being without a rate court than risk becoming in any way associated with ASCAP proceedings**.  BMI has spent its entire existence as ASCAP's principal competitor, distinguishing itself from ASCAP in every practical manner, and cannot compromise its status by being thrown into the same rate court as ASCAP.

Porter Decl. Ex. 4, Berenson Aff. ¶ 33 (bolded and italicized emphasis added).

In its response to the Modification Motion, the United States consented to the addition of the Rate Court, but did not oppose the separate rate court requirement.  *See* Porter Decl. Ex. 1, Order Modifying the 1966 Consent Decree Herein, at *1.  The United States understood the Article XIII amendment as BMI did, and described its effect as "depriv[ing] **any Judge assigned to any ASCAP matter** of jurisdiction in this case . . . ."  Porter Decl. Ex. 5, Memorandum of the United States in Response to the Modification Motion (the "<u>1994 US Response</u>"), at 2 n.1 (emphasis added).  It further described BMI's request as one "for a separate 'rate court'" and explained that the DOJ was maintaining neutrality because it viewed judicial assignments as a matter of the Court's discretion.  *Id.*

Licensees, including the RMLC, also understood that the amendment to Article XIII would create separate rate courts.  The "User Community"—a group of BMI's licensees including the RMLC and various television licensees—submitted a response to the Modification Motion.  *See*

---

[4] BMI revised its original proposal to amend Article XIII after discussions with music users.  *See* Porter Decl. Ex. 3, Berenson Supp. Aff. ¶ 2.  The changes removed clauses referencing protecting the confidentiality of BMI's business and fostering competition among PROs.  *Compare* Porter Decl. Ex. 4, Berenson Aff. Ex. H, at V, *with* Porter Decl. Ex. 3, Berenson Supp. Aff. Ex. A, at V. Neither clause related to the mandatory rate court separateness.

Porter Decl. Ex. 6, Memorandum of User Community Constituents in Response to the Modification Motion (the "User Memo").  Like the United States, the User Community supported and consented to the creation of the rate court, and did not oppose the separate rate court provision. *Id.* at 20.  The User Memo shows the User Community understood that the amendments to Article XIII were intended to guarantee separate rate courts.  *Id.*  It refers to the proposed amendment as the "***mandatory two-court provision***" and explained that BMI advised counsel for the User Community that the 1994 Amendments were "presented as a 'package.'"  *Id.* at 20 n.8 (emphasis added).  The User Community made an affirmative decision to accept this package deal:

> [R]ather than jeopardize the core objective of implementing a rate court/automatic licensing mechanism, the User Community expresses no opposition to the proposed mandatory two-court provision on the instant motion.

*Id.*

The RMLC was represented by Kenneth Steinthal, then of Weil, Gotshal & Manges ("Weil"), in submitting the User Memo.  *Id.* at 21.  Mr. Steinthal signed the User Memo on behalf of counsel for the various users.  *Id.*  Today, Mr. Steinthal still represents the RMLC, as lead counsel who commenced the joint rate case against BMI and ASCAP.

Judge Patterson, the judge then overseeing the Consent Decree, held that BMI's proposal was in the public interest, granted the Modification Motion, and incorporated the 1994 Amendments in the Consent Decree.  *See* Porter Decl. Ex. 1, Order Modifying the 1966 Consent Decree Herein, at *1.

**B.    In 2014 the RMLC Acknowledged (Again) that the Consent Decree Included a "Firewall" Separating the BMI and ASCAP Rate Courts**

In 2014, in response to a DOJ review of the BMI and ASCAP consent decrees, the RMLC submitted comments[5] that included a proposal to remove "the 'firewall' codified in Section XIII of the BMI Consent Decree that serves to maintain separate BMI and ASCAP rate courts . . . ." *See* Porter Decl. Ex. 7, Comments, at 33.  This proposal was not accepted by the DOJ.  In 2016, the DOJ closed this review, and determined not to seek modification of either the BMI or ASCAP consent decrees.  *See* Porter Decl. Ex. 8, Statement of the Department of Justice on the Closing of the Antitrust Division's Review of the ASCAP and BMI Consent Decrees, at 3.  Indeed, in its statement closing the review, the DOJ acknowledged "[t]he decrees . . . provide for the creation of *two separate* 'rate courts[.]'"  *Id.* at 7 (emphasis added).

**C.    The Music Modernization Act Randomized Assignment of Rate Court Judges and Did Not Alter the Requirement of Mandatory Separateness**

In 2018, the MMA was signed into law.  The MMA altered the judicial assignment process for rate court cases, specifying that such cases should be randomly assigned through the SDNY's "wheel" and no longer assigned to the respective judges overseeing the separate consent decrees. *See* 28 U.S.C. § 137(b)(1).

The MMA places two limits on the wheel system.  First, a rate court case cannot be assigned to a judge that has continuing jurisdiction over a PRO consent decree or has previously had such jurisdiction.  28 U.S.C. § 137(b)(1)(B)(i).  Second, the MMA preserved the separateness of the BMI and ASCAP rate court proceedings by commanding that a rate court case cannot be

---

[5] The RMLC's comments were submitted jointly with the Television Music License Committee. *See* Porter Decl. Ex. 7, Comments of the Radio Music License Committee, Inc. and the Television Music License Committee, LLC, dated August 6, 2014 ("Comments").  The signatory to the 2014 comments was R. Bruce Rich, of Weil.  Like Mr. Steinthal, Mr. Rich represented the RMLC in connection with submission of the 1994 User Memo.  *See* Porter Decl. Ex. 6, User Memo, at 21.

assigned to a judge "to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application." 28 U.S.C. § 137(b)(1)(B)(ii).

Nothing in the text of the MMA purports to amend or modify the separate rate court requirement or any other provision of the BMI Consent Decree. Nor does anything in the MMA's legislative history suggest any such intent. To the contrary, the MMA preserves the separateness of the BMI and ASCAP rate court proceedings by expressly precluding the assignment of a rate case to a judge already presiding over another rate case. It likewise preserves separateness by forbidding the judge overseeing one of the consent decrees from taking a rate case related to the other PRO. If anything, the MMA expands the guarantee of separate rate court proceedings by extending it to ASCAP (whose decree lacks an provision analogous to Article XIII).

### D.     The RMLC Files A Joint Proceeding Against ASCAP and BMI

On June 15, 2022, the RMLC commenced a joint rate proceeding against BMI and ASCAP for the determination of reasonable licensee fees for both a BMI license under the BMI Decree and an ASCAP license under ASCAP's decree ("AFJ2"). The case is captioned *Radio Music License Committee, Inc. v. American Society of Composers, Authors, and Publishers; and Broadcast Music, Inc.*, No. 1:22-cv-5023, and was assigned to the Hon. John P. Cronan and Magistrate Judge Stewart D. Aaron. A copy of the RMLC's Petition is attached as Porter Decl. Ex. 9.

The RMLC's petition does not address Article XIII of the Decree, yet contends that the MMA must permit joint proceedings based on a mechanical, forced reading of the MMA that would be contrary to the intent of both the Consent Decree and the MMA. *See id.* ¶ 13 (the RMLC alleges that "[u]nder the MMA, RMLC's application cannot be assigned to Judge Cote or Judge Stanton. But any other judge is eligible, other than 'a judge to whom another proceeding

concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application'; there is currently no such judge in this district.").

The RMLC recognizes that, under the MMA, if a BMI rate court proceeding had been commenced and assigned to a judge, a subsequently filed ASCAP rate court proceeding could not be assigned to that same judge. *Id.* ¶ 12. Nonetheless, the RMLC takes the strained position that by filing a single petition that combines two separate rate court proceedings under the jurisdiction of two separate consent decrees, a singular moment in time exists by which the RMLC may proceed in a consolidated fashion and avoid the MMA's clear requirement that no single judge can preside on multiple rate court proceedings. *Id.* ¶ 14.

### E.     BMI Files This Application for Construction of the Decree

Although the MMA provided for the random assignment of judges to oversee rate-setting, it preserved this Court's exclusive jurisdiction over the interpretation of the Decree, and "the right[] of any party to a consent decree or to a proceeding to determine reasonable license fees, to make an application for the construction of any provision of the applicable consent decree," that "shall be referred to the judge to whom continuing jurisdiction over the applicable consent decree is currently assigned." 28 U.S.C. § 137(b)(2). When such an application is made, the attendant rate court proceeding is automatically stayed until it is resolved. *Id.* Accordingly, concurrent with this application, BMI is filing a notice of this Application with Judge Cronan, and requesting an order directing the MMA's mandated stay (the "Notice of Stay"). A copy of the Notice of Stay is attached hereto as Porter Decl. Ex. 10.

The application before this Court is limited to the interpretation of Article XIII of the Consent Decree, which is the issue over which Your Honor has continuing exclusive jurisdiction. As detailed in the attached Notice of Stay, BMI intends to raise additional statutory and procedural arguments before Judge Cronan, if necessary, once the threshold Decree question is resolved.

## JURISDICTION

Construction of the Consent Decree is within the jurisdiction of this Court, which has continuing jurisdiction "for the purpose of enabling either of the parties to [the Decree] to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of the" Decree.  Porter Decl. Ex. 11, Consent Decree Art. XIII.

Likewise, the MMA confirms the Decree's requirements, providing that if a party to a rate court proceeding makes an application for construction of the consent decree, as BMI has done here,  "[s]uch application shall be referred to the judge to whom continuing jurisdiction over the applicable consent decree is currently assigned."  28 U.S.C. § 137(b)(2).

## ARGUMENT

### A.    The Consent Decree Bars Joint Rate Court Proceedings

The Court looks to the text of a decree in construing its meaning.  *See United States v. Am. Soc'y of Composers, Authors & Publishers*, 782 F. Supp. 778, 787–88 (S.D.N.Y. 1991) ("*In re Turner Broadcasting*") ("[D]ecrees are generally to be interpreted consistently with their 'plain meaning' or 'explicit language.'").  Here, the plain text of the Consent Decree forbids a judge of the Southern District from exercising jurisdiction over BMI at the same time that that judge has jurisdiction over ASCAP in ***any action*** arising under the consent decrees.  *See* Porter Decl. Ex. 11, Consent Decree Art. XIII ("[T]he jurisdiction retained by this Court over [the Consent Decree] shall be exercised by a Judge of this Court other than one to whom has been assigned ***any action*** in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization (e.g. ASCAP) other than defendant.") (emphasis added).

10

Rate Court proceedings against either of BMI or ASCAP arise under the continuing jurisdiction maintained in their respective consent decrees.[6]  BMI rate court proceedings are "[s]ubject to all provisions of" the Consent Decree.  Porter Decl. Ex. 11, Consent Decree Art. XIV(A).  Likewise for ASCAP.  *See* Porter Decl. Ex. 112, AFJ2, at Art. I ("This Court has jurisdiction of the subject matter hereof . . . .").  The RMLC cannot dispute this.  Indeed, its Petition invokes the jurisdiction conferred by each decree:

> 9. **Under § IX(A) of the ASCAP Decree, this Court has continuing jurisdiction over ASCAP** to determine reasonable license fees and terms governing the public performance of musical works in the ASCAP repertory by music users such as RMLC's members. **RMLC invokes that jurisdiction** in seeking a determination of reasonable ASCAP rates and terms for blanket licenses, adjustable-fee blanket licenses and per-program licenses for the License Term.

> 10. Likewise, **under § XIV of the BMI Decree, this Court has continuing jurisdiction over BMI** to determine reasonable license fees and terms governing the public performance of musical works in the BMI repertory by music users such as RMLC's members. **RMLC invokes that jurisdiction** in seeking a determination of reasonable BMI rates and terms for blanket licenses, adjustable-fee blanket licenses and per-program licenses for the License Term.

Porter Decl. Ex. 9, RMLC Petition ¶¶ 9-10 (emphasis added).  Under the Decree, no judge assigned to an ASCAP rate case can oversee a BMI rate proceeding.

BMI's construction of the Consent Decree is consistent with the clear understanding of all interested parties at the time the rate court provision was added in 1994.  Indeed, BMI, the United States, and the RMLC (along with the "User Community" of licensees) all unequivocally acknowledged that the new language mandated separate rate court judges for BMI and ASCAP.  *See supra* at 4-6.  The RMLC confirmed this was still their understanding of the Decree as recently as 2014, and the United States did so in 2016.  *See supra* at 7.

---

[6] The MMA recognizes this.  Its assignment provision refers to "any application for the determination of a license fee for the public performance of music **in accordance with the applicable consent decree** . . . ." 28 U.S.C. § 137(b)(1)(B) (emphasis added).

Perhaps the RMLC will argue that a rate court proceeding against ASCAP is a unique proceeding and not an "action in which a judgment has been entered retaining jurisdiction over" a PRO other than BMI.  *See* Porter Decl. Ex. 11, Consent Decree Art. XIII.  Any such argument is belied by the RMLC's invocation of the jurisdiction of the United States District Court for the Southern District of New York over the joint rate proceeding pursuant to the BMI and ASCAP consent decrees.  All BMI rate cases arise under the Decree.  Indeed, they are *creatures* of the Decree; without the Decree, there would be no jurisdiction for a federal court to adjudicate the reasonableness of any fees to be charged to a music user by BMI.

When ASCAP and a prospective licensee cannot reach agreement on terms, "each party is granted the right to petition the United States District Court for the Southern District of New York, ***which retained jurisdiction***, to set a reasonable fee."  *See Pandora Media, Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 785 F.3d 73, 76 (2d Cir. 2015) (emphasis added) (citations omitted); *see also In re Petition of Pandora Media, Inc*., 6 F. Supp. 3d 317, 320 (S.D.N.Y. 2014) ("[P]ursuant to Article IX of the consent decree under which ASCAP operates . . . Pandora requested . . . that this Court set a rate for that licensing fee."), *aff'd sub nom. Pandora Media, Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 785 F.3d 73 (2d Cir. 2015).[7]  Indeed, up until 2009, ASCAP rate court cases were filed on the same docket used for its consent decree.  That

---

[7] The same is true in BMI proceedings.  *See, e.g.*, *United States v. Broad. Music, Inc.,* No. 64 CIV. 3787 (LLS), 2001 WL 829874, at *1 (S.D.N.Y. July 23, 2001) ("Defendant Broadcast Music Inc. . . . ***applies to this court in its rate-setting capacity*** under Article XIV of the [Consent Decree].") (Stanton, J.) (emphasis added), *overruled on other grounds*, 316 F.3d 189 (2d Cir. 2003); *United States v. Broad. Music, Inc.*, 316 F.3d 189, 190 (2d Cir. 2003) ("***Under a consent decree*** . . . the United States District Court for the Southern District of New York (Stanton, J.), ***functioned as a rate-setting court***, to fix the rate to be paid to Broadcast Music, Inc. ("BMI") by Music Choice . . . .") (emphasis added); *Broad. Music, Inc. v. Pandora Media, Inc*., 140 F. Supp. 3d 267, 270 (S.D.N.Y. 2015) (Stanton, J.) (BMI "has petitioned pursuant to article XIV of the BMI Consent Decree . . . .").

practice was discontinued by order of Judge Cote "to maintain separate files and docket sheets for each matter."  *See* Porter Decl. Ex. 13, August 7, 2009 Corrected Order, *United States v. American Soc'y of Composers, Authors & Publishers*, 41-cv-1395, ECF No. 389, at 1.[8]  The United States shared this view in their response to the Modification Motion.  "ASCAP licensees . . . ***invoke the jurisdiction of the Court to establish reasonable fees under the ASCAP consent decree*** . . . ." Porter Decl. Ex. 5, 1994 US Response, at 9 (emphasis added).

To the extent there is any ambiguity in the Consent Decree, it is eliminated by the express prohibition in Article XIII against magistrate judges and masters overseeing simultaneous proceedings against both BMI and ASCAP.  *See* Porter Decl. Ex. 11, Consent Decree Art. XIII ("No reference or assignment of any issue or matter under this Final Judgment shall be made to a Magistrate Judge or Master to whom has been referred or assigned any pending issue or matter in which any music performing rights licensing organization other than defendant as to which this Court has entered judgement retaining jurisdiction, (e.g. ASCAP) is a party.").  Reading Article XIII in its entirety, it would be irrational to conclude that a single judge could be appointed to hear a consolidated rate court proceeding, but that judge would have to enlist the assistance of two separate Magistrate Judges or Masters to separately determine matters or issues that may arise in the joint proceeding depending on whether such matters relate to BMI or ASCAP.[9]

The Decree is clear.  It can, and must, be read only one way.  In the event the Court disagrees and views the Decree as ambiguous, it "must look to extrinsic evidence . . . ."  *In re*

_____

[8] At the time of the order, nine rate court applications were pending on the same docket.  *Id.* at 4. The order directed that the Clerk of Court note each new rate court case on the consent decree docket, and required parties to mark all submissions as related to the consent decree case.  *Id.*  at 3.

[9] BMI and ASCAP have been assigned to the same magistrate judge in the pending joint proceeding, which likewise violates the Consent Decree (and is an issue we will bring to the attention of Judge Cronan, in the event this Court determines that the Decree does not prohibit joint proceedings).

*Turner Broadcasting*, 782 F. Supp. at 788.  This can include (i) the "circumstances surrounding the formation of the consent order"; (ii) the meaning of any technical words used by the parties; and (iii) any documents expressly incorporated in the decree.  *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 235 (1975); *see also United States v. Broad. Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001) (explaining that where a consent decree is ambiguous, "a court may consider extrinsic evidence to ascertain the parties' intent, including the circumstances surrounding the formation of the decree").  But, as detailed above, the extrinsic evidence supports BMI's interpretation.

The same judge cannot oversee a joint rate court proceedings against BMI and ASCAP.  Concluding otherwise would not only go against the plain text and the parties' mutual understanding of the Consent Decree, it would be inequitable.  BMI's agreement to a rate court was contingent on separateness from ASCAP.  As BMI's then-General Counsel told the court, "BMI would rather retain its current position of being without a rate court than risk becoming in any way associated with ASCAP proceedings."  *See* Porter Decl. Ex. 4, Berenson Aff. ¶ 33.  The User Community—including the RMLC—acknowledged they were agreeing to a "package" proposal to get the rate court they desired, and did not oppose BMI's demand for separateness.  *See supra* at 6.  The RMLC had every opportunity to challenge Article XIII in 1994.  It declined to do so, because it determined that it was to its advantage to acquiesce to BMI's demand in order to secure a rate court.  Later unhappy with the package deal, it first pressed the DOJ to modify the Decree the eliminate the separate rate courts provision.  *See supra* at 7.  The DOJ declined.  *Id.*  The RMLC should not be permitted to circumvent the express language, as well as the clear intent, of the Decrees.

## <u>CONCLUSION</u>

For the foregoing reasons, BMI requests that the Court issue a ruling declaring that the

joint rate court proceedings against BMI and ASCAP are prohibited by Article XIII of the Decree.


Dated:   July 8, 2022                            MILBANK LLP
         New York, New York


                                       /s/ *Scott A. Edelman*
                                       Scott A. Edelman
                                       Atara Miller
                                       Andrew Porter
                                       55 Hudson Yards
                                       New York, New York 10001
                                       Telephone: 212-530-5000
                                       Facsimile: 212-530-5219
                                       Email: sedelman@milbank.com

                                       -and-

                                       Stuart Rosen
                                       Hope Lloyd
                                       Revi-ruth Enriquez-Cohen
                                       7 World Trade Center
                                       250 Greenwich Street
                                       New York, New York 10007

                                       *Counsel for Broadcast Music, Inc.*