## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    *Plaintiff,*

      *v.*

BROADCAST MUSIC, INC.

    *Defendant.*

Civil Action No.: 1:64-cv-03787-LLS

*Related to Radio Music License Committee, Inc. v. American Society of Composers, Authors and Publishers; and Broadcast Music, Inc., (S.D.N.Y. 2022) 1:22-cv-05023-JPC*

## RADIO MUSIC LICENSE COMMITTEE'S OPPOSITION TO
## BMI'S APPLICATION FOR CONSTRUCTION OF CONSENT DECREE

Kenneth L. Steinthal
Ethan P. Davis
David P. Mattern
Amanda R. Farfel
Benjamin A. Torres
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone: (415) 318-1200
ksteinthal@kslaw.com

*Counsel for Radio Music License Committee, Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................5

I.   BMI's Application Should Be Dismissed As Moot or For Lack of Statutory Authority .........5

II.  Even If This Court Were To Consider BMI's Application—Which It Should Not, As The
     Question Is Properly Before Judge Cronan—The Plain Language And Legislative History Of
     The MMA Make Clear That ASCAP and BMI May be Joined in a Unitary RMLC
     Proceeding.......................................................................................................................6

     A.  The Music Modernization Act Authorizes Unitary Rate Court Applications ....................6

     B.  The Federal Rules of Civil Procedure Authorize Joint Proceedings Based On
         Common Questions of Fact and Law...............................................................................12

CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cty.*,
  140 S. Ct. 1731 (2020)..................................................................................................8

*Broadcast Music, Inc. v. DMX Inc.*,
  683 F.3d 32 (2d Cir. 2012)....................................................................................11, 13

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019) ...........................................................................................9

*El Omari v. Int'l Crim. Police Org.*,
  35 F.4th 83 (2d Cir. 2022) .........................................................................................10

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)....................................................................................................11

*Gallo v. Moen Inc.*,
  813 F.3d 265 (6th Cir. 2016) .......................................................................................9

*Hagan v. Rogers*,
  570 F.3d 146 (3d Cir. 2009)..........................................................................................8

*Henson v. Santander Consumer USA Inc.*,
  137 S. Ct. 1718 (2017)................................................................................................12

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020)................................................................................................10

*McGirt v. Oklahoma*,
  140 S. Ct. 2452 (2020)................................................................................................10

*MCI Tele. Corp. v. Am. Telephone & Telegraph Co.*,
  512 U.S. 218 (1994)....................................................................................................11

*Pandora Media, Inc. v. ASCAP*,
  785 F.3d 73 (2d Cir. 2015)..........................................................................................13

*United States v. ASCAP*,
  627 F.3d 64 (2d Cir. 2010)..........................................................................................13

*United States v. Broadcast Music, Inc.*,
  275 F.3d 168 (2d Cir. 2001)..........................................................................................3

*United States v. Martin*,
  974 F.3d 124 (2d Cir. 2020)..........................................................................................8

**Statutes**

28 U.S.C. § 137..................................................................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 20 ......................................................2, 6, 8, 12

*Music Policy Issues: A Perspective From Those Who Make It*, Hearing Before the
  S. Comm. on the Judiciary, 115th Cong. 9 (Jan. 26, 2018) ..................................8, 9

## INTRODUCTION

Rather than litigate the RMLC's rate court case in Judge Cronan's courtroom, Broadcast Music, Inc. seeks to pull this Court into the dispute.  BMI's procedural maneuver is creative, but it is a waste of everyone's time.

Under the Music Modernization Act of 2018 ("MMA"), this Court has only limited authority to decide "the construction of any provision of the applicable consent decree."  28 U.S.C. § 137.  The Court lacks the authority to decide other issues that properly belong in front of Judge Cronan, such as questions of statutory interpretation about the meaning of the MMA.  BMI knows this, which is why its motion to stay in the rate court case contains a lengthy "outline" of the statutory arguments about the MMA that it plans to present when the case returns to Judge Cronan's courtroom.

Left for this Court, then, is an effectively irrelevant question: what the consent decree's judicial assignment provision meant before Congress replaced it in the MMA with a new assignment procedure governing BMI and ASCAP rate court cases.  No one disputes that the MMA changed the law governing the judicial assignment of rate-setting cases arising under the BMI and ASCAP consent decrees. The issue at hand is *how* Congress changed the assignment process, which raises a question of statutory interpretation.  No matter what this Court decides, then, this matter appears destined to land back in Judge Cronan's courtroom for a ruling on whether the MMA prohibits a unitary rate court petition.  Rather than embark on a detour in this Court, it would have been better to simply resolve the MMA question in Judge Cronan's courtroom in the first instance.

This Court should therefore deny BMI's Application either as moot or for lack of jurisdiction.  To the extent BMI seeks a ruling on the meaning of the consent decree before the

MMA, the application is moot because no one disputes the assignment process before 2018 (*i.e.*, that rate court cases against BMI had to be filed in the court with general supervisory authority over the BMI decree and ASCAP rate court cases had to be filed before the Judge supervising the ASCAP decree).  If what BMI actually seeks is a ruling from this Court on the meaning of the MMA, on the other hand, then the Court lacks jurisdiction.

If the Court determines that it may decide the meaning of the MMA, it should hold that the MMA authorizes a unitary rate court petition against both ASCAP and BMI.  Through the MMA, Congress chose to alter the prior method of assigning cases spelled out in the consent decrees, including in Section XIII of the BMI Consent Decree.  Under the MMA, "any application for the determination of a license fee for the public performance of music" licensed by BMI (and ASCAP) shall be "randomly assigned to a judge of" the Southern District of New York.  28 U.S.C. § 137(b)(1)(B).  Under that rule, the RMLC's application was randomly and properly assigned to Judge Cronan.  Moreover, Rule 20 of the Federal Rules of Civil Procedure makes clear that joining defendants in a single action is proper so long as "any right to relief . . . aris[es] out of the same transaction[] or occurrence" and "any question of law or fact common to all defendants will arise in the action."  Here, many such common questions will arise, including the governing standards for determining reasonable ASCAP and BMI license fees, issues regarding market share methodology, actual market shares, the term of the licenses, and much more.  None of the arguments that BMI makes here counsels otherwise.

## BACKGROUND

ASCAP and BMI are performing rights organizations ("PROs") that control the rights to publicly perform millions of musical compositions.  "In 1941, the United States brought separate antitrust suits against BMI and . . . ASCAP, for unlawfully monopolizing the licensing of

performing rights.  Both suits were settled by consent decree." *United States v. Broadcast Music, Inc.*, 275 F.3d 168, 171–72 (2d Cir. 2001).  To control ASCAP's and BMI's market power, the consent decrees contain provisions authorizing music users like the RMLC to file "rate court" petitions to "enable[] the court to set fees for licenses when license applicants" cannot reach agreement with the PROs.  *Id.* at 172.  This Court has continuing jurisdiction over the BMI Consent Decree; Judge Denise Cote has continuing jurisdiction over the ASCAP Consent Decree.

Before the Music Modernization Act (Pub. L. 115-264, title I, § 104, Oct. 11, 2018, 132 Stat. 3726), petitions to determine rates and terms under each of the ASCAP Consent Decree and BMI Consent Decree were required to be filed in the Southern District of New York and referred to the judges having jurisdiction over the ASCAP Consent Decree and BMI Consent Decree, respectively.  In practice, therefore, Judge Cote handled petitions involving ASCAP and this Court handled petitions involving BMI.  BMI's application to this Court spends page after page establishing this uncontroversial point.

In 2018, Congress replaced the consent decrees' assignment system with a new process for ASCAP and BMI rate court petitions.  Specifically, the MMA revised 28 U.S.C. § 137 by adding the following provision:

> [I]n the case of any performing rights society subject to a consent decree, any application for the determination of a license fee for the public performance of music . . . shall be made in the district court with jurisdiction over that consent decree and randomly assigned to a judge of that district court according to the rules of that court for the division of business among district judges, provided that any such application shall not be assigned to—
>
> (i)     a judge to whom continuing jurisdiction over any performing rights society for any performing rights society consent decree is assigned or has previously been assigned [*i.e.*, Judge Cote or Judge Stanton]; or
>
> (ii)     a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application.

- 3 -

28 U.S.C. § 137(b)(1)(B).

The new law thus specifically withdraws jurisdiction over rate court proceedings from Judge Cote and this Court.  In doing so, the MMA brings rate court litigation closer to, and more in line with, the ordinary federal rules by specifying that each rate court petition "shall be . . . randomly assigned to a judge" in the Southern District of New York.  *Id.*  The law further prohibits assigning a petition to "a judge to whom continuing jurisdiction over any performing rights society consent decree is assigned or has previously been assigned" (*i.e.*, Judge Cote and this Court). *Id.* § 137(b)(1)(B)(i).  To ensure that petitions are distributed to different judges, the law also bars assignment to "a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application." *Id.* § 137(b)(1)(B)(ii).  The new law thus eliminates the pre-MMA requirement that ASCAP and BMI rate court petitions proceed separately before different judges.

Despite withdrawing jurisdiction over rate court proceedings from Judge Cote and this Court, the MMA contains a limited carveout allowing BMI, ASCAP, or any party to a rate court proceeding "to make an application for the construction of any provision of the applicable consent decree."  *Id.* § 137(b)(2).  Such an application "shall be referred to the judge to whom continuing jurisdiction over the applicable consent decree is currently assigned."  *Id.*  In the event an application "is made in connection with a rate proceeding, such rate proceeding shall be stayed until the final determination of the construction application."  *Id.*

On June 15, 2022, the RMLC filed an application against ASCAP and BMI that seeks a determination of reasonable final fees and terms for blanket licenses, adjustable-fee blanket licenses, and per-program licenses, for each of ASCAP and BMI's respective repertoires.  The license term is identical against both BMI and ASCAP (January 1, 2022, through December 31,

2026).  The RMLC's application was randomly assigned to Judge Cronan.  On July 8, 2022, BMI filed an application with this Court purporting to seek construction of its consent decree.  Judge Cronan has stayed the rate proceeding pending this Court's resolution of BMI's construction application.

## ARGUMENT

### I.    BMI's Application Should Be Dismissed As Moot or For Lack of Statutory Authority

BMI's Application can be understood in two different ways, both of which lead to the same result.

*First*, to the extent BMI is seeking this Court's thoughts on what the consent decree means as if the MMA had not been enacted, then the application is moot in light of Congress's passing of the Act.  BMI's briefs suggest that this is an appropriate reading: BMI's motion to stay the proceedings in front of Judge Cronan focuses heavily on the MMA, while its brief in this Court almost exclusively analyzes the pre-2018 history of the BMI Consent Decree.  If this reading of BMI's application is correct, then the application is moot because everyone agrees that the BMI Consent Decree (were the MMA never enacted) would require rate court petitions against BMI and ASCAP to proceed separately.  There is no need for this Court to issue an advisory opinion.

*Second*, BMI may be asking this Court to decide that the MMA prohibits a unitary rate court petition of the nature filed by the RMLC on June 15.  If that is what BMI is after, then this Court lacks jurisdiction.  Congress explicitly withdrew jurisdiction over rate court cases from Judge Cote and from this Court, leaving only a narrow reservoir of remaining authority.  Under the MMA, this Court's authority is limited to "the construction of any provision of the applicable consent decree"; the Court may not decide questions apart from the construction of the decree.  Separate questions, including the question of statutory interpretation of the MMA regarding whether a unitary petition is permitted under the new judicial assignment provisions for

BMI/ASCAP rate court cases, belong to the randomly assigned rate court judge, here Judge

Cronan. 28 U.S.C. § 137(b)(2). This Court should not usurp the rate court judge's role.[1]

The Application should therefore be dismissed as moot or for lack of jurisdiction.

**II.    Even If This Court Were To Consider BMI's Application—Which It Should Not, As The Question Is Properly Before Judge Cronan—The Plain Language And Legislative History Of The MMA Make Clear That ASCAP and BMI May be Joined in a Unitary RMLC Proceeding**

The Court should reject BMI's invitation to issue an advisory opinion on the meaning of

its decree and, therefore, dismiss the application as moot. But if this Court chooses to address the

merits, it should conclude that the MMA abrogated the assignment system for rate court cases as

specified in the BMI Consent Decree. The assignment of the RMLC's petition to Judge Cronan is

proper under the plain language of the MMA and Federal Rule of Civil Procedure 20.

**A.    The Music Modernization Act Authorizes Unitary Rate Court Applications**

The Music Modernization Act (and Rule 20 of the Federal Rules of Civil Procedure)

authorized the RMLC's unitary petition. By enacting the MMA, Congress tossed out the old

method for assigning rate court cases and instead determined that rate proceedings should largely

---

[1] BMI may argue that the MMA question is related to the question of decree construction, so that this Court may resolve both together. But that broad understanding of this Court's jurisdiction would be incompatible with the MMA, which clearly distinguishes between matters of decree construction, over which this Court retains jurisdiction, and all other questions that arise in rate court proceedings. (Of course, this Court also retains jurisdiction over other matters associated with supervision of the decree that are unrelated to rate court proceedings.) Indeed, many if not all of the questions in front of the rate court could be described as related in some way to the underlying consent decree. For example, the BMI Consent Decree specifies that the rate court should make a "determination of a reasonable fee," § XIV(A), a standard that governs virtually everything that happens in the rate court. But if every question about a "reasonable fee" could be referred to this Court for a "construction" of the decree, the MMA would be nullified. In truth, there is a difference between construing a consent decree and deciding a question of statutory interpretation. "Construction" refers to interpreting the text of the consent decree, and does not include ancillary questions involving statutory interpretation. In the same way, there is a difference between "construing" the meaning of a contract and deciding whether that contract is void as against public policy. And there is a difference between construing the meaning of a patent and determining whether the patent is void for obviousness.

be assigned like any other case.  Instead of funneling all ASCAP cases to Judge Cote and all BMI cases to this Court, Congress determined that "any application for the determination of a license fee" shall be made, subject to "[r]andom assignment" and "according to the rules of th[is] Court for the division of business among judges."  28 U.S.C. § 137.  In accordance with that provision, the RMLC filed "an application" against ASCAP and BMI "for the determination of a license fee," which was "random[ly] assign[ed]" to Judge Cronan.  Pet. ¶ 1.  The rules for the "division of business among judges" include standards for determining whether cases are related that track the joinder rules.  *See* Local Rule 13, Rules for the Division of Business Among District Judges, S.D.N.Y. (Sept. 29, 2021).  Under those joinder rules, the RMLC may name ASCAP and BMI as defendants because its petition manifestly involves the same transaction or occurrence and common questions of law and fact.  *See infra* pp. 12–14.

BMI does not meaningfully dispute any of these text-based arguments.  Instead, it asserts that "[n]othing in the text of the MMA purports to amend or modify the separate rate court requirement or any other provision of the BMI Consent Decree."  Application at 8.  But "amend or modify" how rate court cases were assigned under the decrees is exactly what BMI lobbied for—and what Congress did—with the Music Modernization Act.  Congress passed the Music Modernization Act in part to address complaints from the music publishing industry that the past regime, where "each PRO set[] its rates before its own single-appointed rate court judge," deprived ASCAP and BMI of "the benefit, like other federal litigants, to have a new judge consider the evidence and possibly set new royalty rates for each case."  *Music Creation Prot./Promotion: Testimony of David Israelite*, Pres. & CEO, Nat'l Music Publishers' Ass'n, Before the S. Comm. on the Judiciary, May 15, 2018, at 4 of 6.  One songwriter, Aloe Blacc, testified in support of the legislation as follows:

This legislation would change ASCAP and BMI rate court procedures to make the rate-setting process for performance rights ***consistent with other Federal litigation*** by randomly assigning a Federal judge using a lottery wheel system. ***We are just trying to make it consistent with the other systems. That is all. That is all.***"

*Music Policy Issues: A Perspective From Those Who Make It*, Hearing Before the S. Comm. on the Judiciary, 115th Cong. 9 (Jan. 26, 2018) (testimony of Aloe Blacc) (emphasis added).

Both the text of the MMA and its legislative history demonstrate the intent of Congress to reposition the rate court assignment system to treat ASCAP and BMI "like other federal litigants." And that includes subjecting ASCAP and BMI—like other federal litigants—to the Federal Rules of Civil Procedure and the ordinary, permissive joinder rules that apply to everyone else. Nothing in the MMA evinces any intention to depart from Rule 20, and Congress legislates with the Federal Rules of Civil Procedure as a backdrop. Indeed, in other contexts, courts have stressed that legislation must be read to give effect to the Rules of Civil Procedure—including Rule 20. *See*, *e.g.*, *Hagan v. Rogers*, 570 F.3d 146, 154 (3d Cir. 2009) (allowing joint prisoner petitions despite the PLRA, noting that "[t]he PLRA does not mention Rule 20 or joint litigation. Repeal by implication occurs only when the newer rule is logically incompatible with the older one"); *see also United States v. Martin*, 974 F.3d 124, 134 (2d Cir. 2020) (assessing congressional intent in the passing of the First Step Act by looking to the Federal Sentencing Guidelines and the Federal Rules of Criminal Procedure). BMI might not have foreseen that the change it lobbied for would permit a joint proceeding, but courts are often called upon to interpret statutes in ways that might exceed "the limits of the drafters' imagination." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020). In for a penny, in for a pound.

BMI's Application repeatedly asserts that its consent decree contains "an express prohibition on joint rate proceedings." Application at 2. But Section XIII says nothing of the sort. All that Section XIII provides in pertinent part is that "the jurisdiction retained by this Court over

this Final Judgment shall be exercised by a Judge of this Court other than one to whom has been assigned any action in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization (e.g. ASCAP) other than defendant."  BMI Consent Decree, § XIII.  And no one disputes that, as the decree specifies, this Court retains jurisdiction over the final judgment against BMI.  Section XIII does not contain any language that addresses a joint rate proceeding.  Nowhere does it say that "BMI shall not be joined in a rate proceeding with another music performing rights organization" or that "a Judge of this Court may not be assigned a joint rate proceeding."  In fact, Section XIII never references a rate "proceeding" at all, even though that is the terminology used in the BMI Consent Decree to describe a rate court.  *E.g.*, *id.* § XIV(A) (discussing "any such proceeding" "for the determination of a reasonable fee"); *id.* § XIV(B) (discussing an applicant's right to perform BMI music "pending the completion of any . . . proceedings").  That "difference in language demands a difference in meaning." *Gallo v. Moen Inc.*, 813 F.3d 265, 270 (6th Cir. 2016).  BMI also spends pages dredging up briefs it filed years ago to assert its supposed unilateral "explicit condition" that it have a separate rate court from ASCAP.  Only, that purported condition was facially omitted in the decree.  *See generally id.*  Regardless of whatever intent BMI had, "when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein*." Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).  And Section XIII does not contain any "express prohibition" regarding rate proceedings.

In any event, the MMA makes clear that Section XIII of the BMI Consent Decree does *not* prohibit unitary rate court petitions.  In BMI's view, Section XIII's reference to an "action in which a judgment has been entered retaining jurisdiction" includes rate court proceedings in addition to the original consent decree actions.  But the MMA explicitly distinguishes between the filing

requirements of new rate court petitions versus the continuing jurisdiction stemming from the original actions that produced the underlying consent decrees.  Under the MMA, a new rate court petition may not be assigned either to "(i) a judge to whom continuing jurisdiction over any performing rights society for any performing rights society consent decree is assigned," *or* "(ii) a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned."  28 U.S.C. § 137(b)(1)(B).  If BMI's reading were correct, subsection (ii) would be superfluous.[2]  *See El Omari v. Int'l Crim. Police Org.*, 35 F.4th 83, 90 (2d Cir. 2022) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

BMI also has no answer to the fact that Congress chose to include two narrow exceptions for how cases can be assigned—yet included no prohibition against a unitary proceeding.  *See* Application at 7–8 (acknowledging "[t]he MMA places two limits on the wheel system").  As noted, Congress specified that an application may not be assigned to the judges with continuing jurisdiction over the decrees (in other words, not to Judges Cote or this Court), and not to a judge who is already assigned a rate court case.  It included no other prohibitions.  BMI might wish that the statute contained a prohibition against unitary applications, but "wishes don't make for laws." *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2462 (2020).  "It is a fundamental principle of statutory

---

[2] BMI also cites the MMA provision altering the judicial assignment system, which refers to the impacted rate court cases as "any application for the determination of a license fee for the public performance of music *in accordance with the applicable consent decree* . . . ." Application at 11 n.6 (emphasis in original).  But the italicized language merely describes the types of cases that are, in fact, the subject of the altered judicial assignment system, *i.e.*, determinations for rate settings under the BMI and ASCAP consent decrees.

interpretation that absent provision[s] cannot be supplied by the courts." *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (cleaned up).

BMI seeks to characterize a reading of the MMA to permit unitary applications as akin to finding "an elephant in a mousehole," a principle that constrains how administrative agencies implement statutory schemes.  BMI Mem. in Support of Mandatory Stay submitted to Judge Cronan, July 8, 2022 ("BMI Stay Motion") at 3, ECF 140-10.  But a unitary proceeding with ASCAP and BMI is hardly on the same footing as one agency's claim of newfound authority to regulate or ban all tobacco products based on "cryptic" language, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000), or another's efforts to authorize itself to upend rate regulations for a whole industry, *MCI Tele. Corp. v. Am. Telephone & Telegraph Co.*, 512 U.S. 218, 231 (1994).  Here, a unitary petition follows Congress's express change in the law.  In any case, there is nothing industry-upending about a rate court proceeding addressing ASCAP and BMI together.  The Second Circuit has consolidated separate rate court proceedings into a single appeal without cries to stop the music.  *Broadcast Music, Inc. v. DMX Inc.*, 683 F.3d 32, 45 (2d Cir. 2012).  Further, the same members/affiliates of ASCAP and BMI license other kinds of publishing rights through a central entity—the Mechanical Licensing Collective.  And the Department of Justice periodically conducts joint reviews of the ASCAP and BMI consent decrees. *See*, *e.g.*, Statement of the Department of Justice on the Closing of the Antitrust Division's Review of the ASCAP and BMI Consent Decrees dated August 4, 2016.

BMI also appears to claim (BMI Stay Motion at 3) that if Congress intended to permit unitary proceedings, it did so in an ineffective manner insofar as the RMLC's action might be construed as precedent that any licensee can bring a unitary proceeding against BMI and ASCAP. But the RMLC does not argue that every conceivable licensing situation will be appropriate for a

unitary proceeding.  For instance, if the period of time covered by a music user's license with BMI covers a materially different period of time than with ASCAP (as BMI suggests is common), a unitary proceeding may not involve the same common factual issues or promote the same interests in judicial economy.  Put differently, there will no doubt be instances when Rule 20 of the Federal Rules of Civil Procedure prevents joinder.

In all events, the text of a law controls over purported legislative intentions.  "The legislature says what it means and means what it says." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (cleaned up).

**B.     The Federal Rules of Civil Procedure Authorize Joint Proceedings Based On Common Questions of Fact and Law**

The MMA was enacted against the backdrop of the Federal Rules of Civil Procedure—and those rules clearly authorize the RMLC's unitary petition.  Rule 20 permits joinder of multiple defendants if (1) "any right to relief . . . aris[es] out of the same transaction[] or occurrence" and (2) if "any question of law or fact common to all defendants will arise in this action."  FED. R. CIV. P. 20.  The RMLC's application easily meets this standard.

*Same Transaction or Occurrence.*  The RMLC's application against ASCAP and BMI relates to the same "transaction or occurrence."  There is a logical relationship between the RMLC's claims against each of ASCAP and BMI because the RMLC seeks a license from each of them (a) to perform a large collection of music where ASCAP and BMI each control shares in the same musical works, (b) for the same period of time, and (c) where ASCAP and BMI will rely on the same evidence as "benchmarks" for determining a reasonable fee.  Indeed, ASCAP and BMI's repertories are so interrelated that they maintain a common database of ownership data for music publishing rights in the United States.  *See* Songview.com (last accessed July 18, 2022) ("Songview was developed by ASCAP and BMI, the nation's two largest Performance Rights

Organizations, to provide music users with the first comprehensive, reliable and consistent data on songwriters, composers, music publishers and copyright ownership shares for the vast majority of songs licensed in the United States.").

    *Common Questions of Law and Fact.*  There are many common questions of law and fact. The "question of law" in a rate proceeding is the same for each of ASCAP and BMI: the "reasonable rate" for the RMLC to pay ASCAP and BMI for the right to publicly perform all of the works in their repertories from 2022 through 2026 based on "benchmark" evidence. Pet. ¶ 28; *see also* ASCAP Decree, § IX(D); BMI Decree, § IXV(A).  And the standard for determining what is a "reasonable" fee is the same for each of ASCAP and BMI under their decrees: "Fundamental to the concept of 'reasonableness' is a determination of what an applicant would pay in a competitive market, taking into account the fact that the PRO, as a monopolist, 'exercises disproportionate power over the market for music rights.'"  *DMX*, 683 F.3d at 45 (quoting *United States v. ASCAP*, 627 F.3d 64, 76 (2d Cir. 2010)).  Determining a reasonable rate involves considering "benchmark" evidence and making "legal determinations" about whether to accept or "reject[]" the "various alternative benchmarks."  *Pandora Media, Inc. v. ASCAP*, 785 F.3d 73, 78 (2d Cir. 2015).

    Moreover, a central issue in this proceeding is a common question of fact: what are the relative market shares of ASCAP and BMI in relation to the total performances of ASCAP/BMI musical works by the RMLC stations?  No one disputes that, "[t]ogether, ASCAP and BMI license the music performance rights to most domestic copyrighted music in the United States."  *DMX*, 683 F.3d at 36; *United States v. ASCAP*, 627 F.3d at 83 (ASCAP and BMI together control 90 percent of public performance market for streaming music).  Nor can it be disputed that the number of performances of works controlled in whole or in part by ASCAP and BMI (and their share of

ownership in those works) is a matter of objective fact.  Yet each of ASCAP and BMI claims that its share is higher than the other's—such that the sum of the parts is much greater than the whole. And each of ASCAP and BMI has used the bigger-than-the-other argument in an effort to ratchet up its rates,  Pet. ¶¶ 20–26, prejudicing the RMLC by forcing it to overpay ASCAP and BMI based on alleged market values that cannot be reconciled.  The RMLC's unitary proceeding against both ASCAP and BMI thus will not only achieve judicial efficiencies given the common legal and factual issues central to the RMLC's application for reasonable fees as to both PROs, but also will provide an opportunity to address this "whipsawing," *see id.* ¶¶ 14, 21–22, that has sparked a cycle of unjustified rate increases (and costly collateral litigation) based on inconsistent ASCAP/BMI market share representations.

## CONCLUSION

Because BMI's Application fails to identify a true consent decree "construction" or "interpretation" issue over which this Court would have jurisdiction, the Application should be denied.  In all events, the MMA should be given effect and interpreted to permit the RMLC's unitary rate court proceeding against BMI and ASCAP.

Dated: July 22, 2022

Respectfully Submitted:

David P. Mattern (pro hac vice forthcoming)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006-4707
Telephone: (202) 207-3945
dmattern@kslaw.com

*/s/ Kenneth L. Steinthal*
Kenneth L. Steinthal (KS-7897)
Ethan P. Davis (pro hac vice forthcoming)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone: (415) 318-1200
ksteinthal@kslaw.com
edavis@kslaw.com

Benjamin A. Torres (pro hac vice forthcoming)
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
btorres@kslaw.com

Amanda R. Farfel (pro hac vice forthcoming)
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
afarfel@kslaw.com

*Counsel for Radio Music License Committee, Inc.*